E. L. Dalton v. Commissioner. Ethel A. Dalton v. Commissioner.
Dalton v. Commissioner
Docket Nos. 4994, 4995.
United States Tax Court
1945 Tax Ct. Memo LEXIS 349; 4 T.C.M. (CCH) 33; T.C.M. (RIA) 45012; January 12, 1945
Geo. S. Atkinson, Esq., Dallas Nat. Bank Bldg., Dallas, Tex., for the petitioners. J. Marvin Kelley, Esq., and John W. Alexander, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases were consolidated for hearing and involve a deficiency of $2,066.40 in income tax for 1941 in the case of each petitioner. Petitioner E. L. Dalton and his two sons, W. E. Dalton and M. L. Dalton, were members of the partnership of E. L. Dalton & Co. The father subsequently entered into a partnership agreement with two other individuals to conduct business under the name of Wohlfeld-Dalton-Dellone. The issue is whether the amount of $25,507.03 received by petitioner E. L. Dalton from the latter partnership *350 as his distributable share of its profits, is taxable to him in his individual capacity as community income, or constitutes income of the former partnership. In the alternative, petitioners allege error in the failure of the respondent to allow as a deduction from their share of the profits of Wohlfeld-Dalton-Dellone, an amount for use of assets of the partnership of E. L. Dalton & Co. and as reasonable compensation for services actually rendered by their sons. Findings of Fact Petitioners, husband and wife, filed their income tax returns for 1941 with the collector of the second district of Texas on the community property and cash bases. Petitioner E. L. Dalton, hereinafter referred to as petitioner, was engaged in the engineering and construction business for many years. During the last 30 years his business activities have been confined to sewer and water works projects. In 1927 his son, M. L. Dalton, became associated with him and in 1935 or 1936, another son. W. E. Dalton, joined the business. On an unspecified date, petitioner and his two sons entered into a partnership agreement for the purpose of continuing the business under the name of E. L. Dalton & Co., effective *351 January 1, 1940. Petitioner contributed certain specified property, and each son contributed cash. Profits and losses of the partnership were to be shared on the basis of 50 per cent to the petitioner, 30 per cent to M. L. Dalton, and 20 per cent to W. E. Dalton. The office of the partnership was in room 406, Great National Life Building, Dallas, Texas. Since their connection with the business, M. L. Dalton has been engaged in construction work outside of the office of the business and his brother has performed office duties most of the time. The sons did not, at any time after January 1, 1940, enter into an agreement with their father authorizing him to engage in a contracting job in which the partnership would not participate. On August 6, 1940, petitioner, Nathan Wohlfeld and Fred Dellone, Jr., formed a partnership to carry on business in the name of Wohlfeld-Dalton-Dellone. The agreement provided that: "The partnership shall be for the sole purpose of negotiating construction contracts with the United States on a cost-plus-a-fixed-fee-basis, entering into such contracts and performing the work thereunder, and doing and performing all things corollary or incident thereto. *352 " Profits and losses of the partnership were to be distributed and borne in the following proportions: Wohlfeld 50 per cent, and petitioner and Dellone each 25 per cent. The agreement also provided that, "The partnership shall terminate upon the completion of the work under a contract with the United States and the collection of all money due thereunder. The partnership shall terminate on the 31st day of December, 1941, unless on that date there is a signed contract with the United States," that the principal office of the partnership should be in room 406, Great National Life Building, Dallas, Texas, and that the capital should be $600,000, one-fourth of which was to be contributed by Dalton, $50,000 immediately. The agreement specified that, "For the purpose of executing large projects with the maximum practicable efficiency, the duties of the three partners will in general be according to their principal past experience." The principal duties of the petitioner were set forth in the agreement to be "in connection with engineering matters and he shall manage the Dallas office of the partnership." The books of account were to be kept "at the site of any work the partnership may *353 undertake" and at the conclusion of any project, the books of account were to be removed to the main office. Each partner agreed to furnish "as required such equipment as he may have available for any project undertaken by the partnership." Equipment contributed by the partners was to be regarded as a loan, but they were to be paid for its use an amount equal to the rental paid therefor by the United States, after first deducting proper charges against such equipment. The principal bank account of the partnership was kept in a bank at Dallas, Texas. For convenience, bank accounts could be opened near the site of a project. Most of the money contributed by the petitioner to the partnership, including his initial contribution of $50,000, was borrowed by him on his individual note. In October 1940, Wohlfeld and Dellone went to Washington, D.C., for the purpose of negotiating a contract to construct an army camp. Petitioner joined them about November 1. On November 2, 1940, the partnership, in connection with its efforts to obtain a contract, executed a questionnaire covering its qualifications to carry out a contract. The roster of employees included W. E. Dalton, assistant purchasing *354 agent, at a salary of $250 a month, for part time work, and M. L. Dalton, utility superintendent, at a monthly salary of $400 for full time services. On November 4, 1940, the partnership entered into a cost-plus-a-fixed-fee contract with the United States for the construction of a Replacement Center and Cantonment in the vicinity of Galveston, Texas, for a fixed-fee of $123,660. The camp was thereafter named Camp Wallace. The contract recited that the members of the partnership of Wohlfeld-Dalton-Dellone were Nathan Wohlfeld, Fred Dellone, Jr., and petitioner, each of whom signed the agreement. Nathan Wohlfeld did not inquire and was not advised whether petitioner's sons would participate in carrying out the contract, or ask petitioner whether he had any partners. E. L. Dalton & Co. could not have met the requirements of the United States for such a contract. The work under the contract was begun in November 1940 and completed in June 1941. Some of the records of Wohlfeld-Dalton-Dellone were kept at and part of its correspondence was conducted from its Dallas office. Practically all of the transactions relating to the construction of Camp Wallace were conducted by Wohlfeld-Dalton-Dellone *355 at that place. M. L. Dalton, working in his individual capacity, had charge of the construction of water, sewer and gas facilities for Wohlfeld-Dalton-Dellone at the site of the project, and as compensation for his services over a period of about four months, received from his employer, Wohlfeld-Dalton-Dellone, amounts aggregating $1,583.91, for which payments the contractor was reimbursed by the United States, in accordance with the terms of the construction contract. The salary paid to his was part of the cost of the project to the United States Government. He did not receive any salary from E. L. Dalton & Co. While the work was in progress at Camp Wallace, W. E. Dalton worked in the Dallas office on affairs of E. L. Dalton & Co. and the partnership of Wohlfeld-Dalton-Dellone, and was not paid a salary by the partnership of E. L. Dalton & Co. He performed no services at Camp Wallace and received no compensation from Wohlfeld-Dalton-Dellone. Petitioner made several trips to Camp Wallace during the progress of the work, but performed no services there. The partnership of E. L. Dalton & Co. rented equipment to Wohlfeld-Dalton-Dellone for use in constructing Camp Wallace, and received *356 therefor rental of $5,508.71, an amount to cover interest, depreciation and expenses, with no profit to the lessor. Wohlfeld-Dalton-Dellone did not pay rent to E. L. Dalton & Co. for using its office in the Great National Life Building. E. L. Dalton & Co. never paid salaries to its members and did no construction work from November 1940 until the middle of 1941, other than the connection its members had with the project at Camp Wallace. After the completion of the contract of November 4, 1940, Wohlfeld-Dalton-Dellone made one or two unsuccessful efforts to obtain another agreement on the same basis. On October 16, 1941, Nathan Wohlfeld, E. L. Dalton and Fred Dellone, Jr., executed an agreement in which they recited that they entered into a partnership agreement on August 6, 1940, for the "sole purpose of negotiating construction contracts with the United States on a cost-plus-a-fixed-fee basis"; that the partnership agreement was limited expressly by its terms to such types of construction; that the contract for the construction of Camp Wallace had been completed, and that they agreed to terminate the partnership as of the date thereof. Wohlfeld-Dalton-Dellone filed a return *357 for the period from November 4, 1940, to November 30, 1941, as a joint venture. A copy of the partnership agreement was attached to the return. The members of the organization were listed as Nathan Wohlfeld, E. L. Dalton and Fred Dellone, Jr. In January 1944, these individuals entered into an agreement with the Commissioner in which they recited that Wohlfeld-Dalton-Dellone was a partnership and that all its profits were distributable to them in specified proportions. Petitioner received $25,507.03. In its partnership return for the calendar year 1941, E. L. Dalton & Co. reported net income of $30,189.63, in the computation of which there was included the receipt of $24,104.31 from Wohlfeld-Dalton-Dellone, and $5,603.71 as rental income on machinery. Of the profits reported by E. L. Dalton & Co., in 1941, petitioner reported $15,094.81 in his return; M. L. Dalton $9,056.89, and W. E. Dalton $6,037.93. In addition thereto, M. L. Dalton reported salary of $1,583.91 from Wohlfeld-Dalton-Dellone, and $600 from Royce City Sewer Co. and claimed a deduction of $1,076.66 for traveling expenses incurred at Galveston. W. E. Dalton reported no income other than his distributive share of the *358 profits of E. L. Dalton & Co. Opinion The issue turns upon whether the share of the profits of Wohlfeld-Dalton-Dellone distributable to petitioner pursuant to express terms of the partnership agreement of August 6, 1940, constitutes community income of petitioners, as determined by the respondent, or represents income of the partnership of E. L. Dalton & Co., of which petitioner and his two sons were members, as contended by the petitioners. There is evidence of record to indicate an implied understanding among the Dalton partners that petitioner's participation in the Wohlfeld partnership would be for the account of the Dalton partnership. Among such evidence are the use of the facilities of the Dallas office without compensation; services performed by W. E. Dalton in such office for the Wohlfeld partnership without a charge to it or the Dalton partnership; use of equipment of the Dalton partnership for rental charges fixed to represent cost, and delivery by petitioner to the Dalton partnership of his share of the earnings of the Wohlfeld partnership. There is much evidence to the contrary and we think it points to the correct solution of the question. There is nothing in *359 the instrument creating the Dalton partnership to bar petitioner from participating in other activities for his own account. The Wohlfeld partnership agreement recited that its members consisted of Wohlfeld, Dellone, Jr., and petitioner. That these co-partners never regarded the Dalton partnership as having any interest in the enterprise is disclosed in several ways. They did not at any time or in any manner provide for distribution of a share of the profits of their venture to any other than to themselves, individually; their contract with the United States for constructing Camp Wallace recites that they were the members of the co-partnership and the return of income, filed after the completion of the contract and the termination of the partnership by an agreement signed by each of the members, makes a like assertion. In January, 1944, in connection with settlement of the amount of distributable income of the Wohlfeld partnership, they executed an instrument that for the period from November 4, 1940, to November 30, 1941, the profits of the partnership were distributable to them. Thus, Wohlfeld, Dellone and petitioner have consistently represented that they alone had an interest *360 in the profits of the Wohlfeld partnership. The testimony of Nathan Wohlfeld is to the effect that he was unaware that any other than the individuals had an interest in the profits of the partnership. The contract with the United States Government provided a fixed fee for the services of the contractor. It was not intended by this understanding that other costs to the Government would include a charge for services of the members of the partnership receiving the fixed fee. The questionaire filed with the War Department during the negotiations conducted for the contract sets forth that petitioner's sons, members of the Dalton partnership, would be employed by the contractor. One was employed and received from the contractor, at the expense of the Government, and therefore, a payment in addition to the fixed fee, compensation at the rate of $400 a month, all of which he retained and reported as income earned in his individual capacity. No contention is made that this partner was requested to pay over the salary to the Dalton partnership upon the ground that the compensation was earned as a partner. This action indicates lack of understanding among the members of the Dalton partnership *361 that any income received by them in carrying out the contract belonged to the firm. It is evident that E. L. Dalton & Co. was not, pursuant to agreement, entitled to the full time services of its members for partnership account. One member, as already referred to, retained the salary he received as an employee of Wohlfeld-Dalton-Dellone, and in addition, he received for his own account, a salary of $600 from the Royce City Sewer Co. The situation here does not call for the application of the rule argued by petitioner as to partnership law governing the use by a partner for his individual benefit, of partnership assets or knowledge gained as a partner, or a partner engaging in a competitive business. See . Here, E. L. Dalton & Co. was compensated by Wohlfeld-Dalton-Dellone for the use of its equipment and while the rental received might have been less than a fair rental, as the evidence indicates, the former firm was willing to allow the latter to use the equipment for the amount paid and it can not be said that it was used by petitioner to his private advantage. It does not appear that petitioner used any of the knowledge he gained as *362 a member of the Dalton partnership to carry out the contract to construct Camp Wallace. He visited the site of the project several times but performed no service there or, so far as the record discloses, at any other place. The business of the Dalton partnership was confined to sewer and water works projects of construction work. It did not have the facilities or sufficient capital to perform a contract such as was entered into by Wohlfeld-Dalton-Dellone. Under the circumstances it can not be said that petitioner, as a member of the partnership of Wohlfeld-Dalton-Dellone was competing with the Dalton partnership. It was not error for respondent to tax petitioners on the income in question. Petitioner contends, in the alternative, that the amounts distributed to his sons out of his share of the profits of the Wohlfeld partnership are deductible by him under section 23 (a) (1) of the Code for services rendered by the sons, and for use of machinery and equipment and the office of the partnership. No grounds are given upon brief for allowing the deductions and we are aware of none. The services rendered by M. L. Dalton and such machinery and equipment as were used were paid for by *363 Wohlfeld-Dalton-Dellone, and the Dalton partnership never, so far as the record discloses, intended to make a charge for the use of its office. Only reasonable compensation for personal services actually rendered is deductible. Petitioner allocates to reasonable compensation for personal services no particular part of the amount sought to be deducted. He has never paid out or agreed to pay out anything to form the basis of such deduction. M. L. Dalton was an employee of Wohlfeld-Dalton-Dellone during approximately one-half of the time consumed by the construction of Camp Wallace. Decision will be entered for the respondent.